**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re:<br><br>KIMMY R. JACKSON<br><br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 13<br>Case No. 10-11716-MSH |
| KIMMY R. JACKSON<br><br>Plaintiff<br><br>v.<br><br>ING BANK, FSB, BANK OF AMERICA HOME LOANS, PORTNOY & GREENE PC, HARMON LAW OFFICES, P.C., AND CAPITAL ONE, N. A.<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>No. 13-01064 |

**MEMORANDUM OF DECISION**

After considerable winnowing during the pretrial phase, what remains of this adversary proceeding brought by Kimmy R. Jackson, the debtor in the main chapter 13 case, are her claims that one of the defendants, the law firm of Portnoy & Greene, P.C. ("P&G"), violated the discharge injunction of Bankruptcy Code § 524 and the Fair Debt Collection Practices Act ("FDCPA") and engaged in deceit, misrepresentation, breach of contract and wrongful foreclosure, all in connection with its attempt to enforce default remedies including foreclosing a mortgage on Ms. Jackson's condominium unit. A trial was held on these claims, as well as on Ms. Jackson's objection to the amended proof of claim of Capital One, N.A., the holder of her

1

mortgage, which objection was consolidated with this adversary proceeding for trial. I now render my findings of fact and conclusions of law concerning these claims and objections pursuant to Fed. R. Bankr. P. 7052.

## Jurisdiction

The resolution of Ms. Jackson's claims against P&G for violation of the discharge injunction and her objection to Capital One's proof of claim are matters over which the bankruptcy court has core jurisdiction. *See* 28 U.S.C. §§ 157(b), 1334; LR, D. Mass. 201. Ms. Jackson's remaining claims are non-core and the court has jurisdiction because they are "related to" her bankruptcy case. *See* 28 U.S.C. § 157(c). This includes her FDCPA claim, because in her pending chapter 13 case in which a plan has yet to be confirmed, the outcome of this claim will likely effect Ms. Jackson's bankruptcy estate. *Boston Reg'l Med. Ctr. v. Reynolds (In re Boston Reg'l Med. Ctr.)*, 410 F.3d 100, 105 (1st Cir. 2005). *Compare Holland v. EMC Mortg. Corp. (In re Holland)*, 374 B.R. 409, 443 (Bankr. D. Mass. 2007) (citing to 11 U.S.C. §§ 541(a)(1), 1306(a)(1) to conclude that "[a] debtor's interest in a cause of action for violations of . . . federal consumer protection statutes which occurred prepetition, and, in the case of a Chapter 13 debtor, post-petition, are property of the estate"), *and Jackson v. Marlette (In re Jackson)*, 317 B.R. 573, 579-80 (Bankr. D. Mass. 2004) (concluding that chapter 13 debtors' claim that arose prior to the case converting from chapter 7 to chapter 13 was property of the estate and that debtors had standing to pursue such claim), *with Arzuaga v. Quantum Servicing Corp. (In re Arzuaga)*, No. 10-00107, 2012 Bankr. LEXIS 1443, at *12-14 (Bankr. D.P.R. Apr. 3, 2012) (finding that the court lacked "related to" jurisdiction over a post-petition FDCPA claim in a chapter 13 case when the plan had been completed and discharge had been entered), *and Vienneau v. Saxon*

2

*Capital, Inc. (In re Vienneau)*, 410 B.R. 329, 334 (Bankr. D. Mass. 2009) (holding that court lacked "related to" jurisdiction because claim arising from post-petition conduct in a chapter 7 case was not property of the estate). Each of the parties has consented to the Court's entry of a final judgment on all these matters. *See* 28 U.S.C. § 157(c)(2).

<u>Procedural Background and Findings of Fact</u>[1]

At all times relevant to this matter, Ms. Jackson owned condominium unit 316 located at 700 Wellman Avenue in North Chelmsford, Massachusetts. In 2008, she defaulted under the terms of a February 17, 2004 note and the mortgage on the condominium unit securing her obligations under that note. The note was payable to America's Wholesale Lender, a trade name used by Countrywide Home Loans, Inc. *See* Pl.'s Ex. 1. The mortgage was granted to Mortgage Electronic Registration Systems, Inc. ("MERS") acting as nominee for America's Wholesale Lender. Pl.'s Ex. 2. As a result of her default, on December 15, 2008, the mortgage was foreclosed and Countrywide Home Loans Servicing, L.P. for the benefit of ING Bank, FSB became the owner of the condominium unit by foreclosure deed (or so it appeared).[2] *See* Pl.'s Ex. 11. Thereafter, Ms. Jackson and Countrywide executed a "Move Out Agreement" dated January 2009 (no day was stated), and in accordance with that agreement on February 6, 2009,

---

[1] The facts are derived from findings in the court's prior memoranda and opinions in this proceeding and in the main case, the agreed facts in the parties' joint pretrial memoranda, the testimony and exhibits placed in evidence at the trial, and the dockets in this adversary proceeding and the main case. A court may take judicial notice of its own dockets. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999).

[2] During the life of this protracted saga different Countrywide entities have appeared on the scene, sometimes fleetingly. For purposes of my rulings here the precise identification of each specific Countrywide entity will serve no purpose and so to minimize unnecessarily taxing the reader I will simply adopt the generic reference "Countrywide" throughout the remainder of this memorandum.

Ms. Jackson vacated the unit. *See* Pl.'s Ex. 12. After moving out of her condominium, Ms. Jackson lived for a time in New Bedford and later in Quincy, Massachusetts. Trial Tr. 14:21–23.

On February 22, 2010, Ms. Jackson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) commencing the main case. The schedules of assets and liabilities filed by Ms. Jackson in support of her chapter 7 petition did not list the North Chelmsford condominium unit as an asset presumably because she had lost it to foreclosure (or so she thought). Ms. Jackson received her discharge on May 25, 2010, and her case was closed on January 5, 2011.

In October 2011, ten months after her bankruptcy case had been closed, Ms. Jackson received a letter from ING Bank informing her of the monthly payment due on her 2004 note. Trial Tr. 17:6–7. This letter was followed about two weeks later by a letter from P&G as ING's counsel demanding payment on that note. Trial Tr. 18:20–23. On January 19, 2012, Ms. Jackson received a second letter from P&G stating that its client, ING Bank, FSB was "the present holder of a mortgage" on Ms. Jackson's North Chelmsford condominium unit and that Ms. Jackson was in default "for failure to make payments due" under the note and accompanying mortgage. Pl.'s Ex. 20.[3] The letter, which was signed by Suzanne Brunelle, a P&G attorney, stated that Ms. Jackson was "required to pay the entire mortgage indebtedness" and that the mortgage and note were "immediately due and payable." *Id.* In the letter Ms. Brunelle requested that Ms. Jackson contact her "to obtain current payoff figures prior to forwarding any payment." *Id.* The letter

---

[3] The letter was incorrect as to the identity of the holder of the mortgage. On January 30, 2009, MERS assigned the note and mortgage to Countrywide for the benefit of ING Bank, FSB. Pl.'s Ex. 6. On February 22, 2012, Countrywide assigned the note and mortgage to ING Bank, FSB. Pl.'s Ex. 7. Thus on January 19, 2012, Countrywide held the mortgage.

4

closed by indicating that P&G was "a 'debt collector' as defined under the Fair Debt Collection Practices Act" and that the firm "was attempting to collect a debt." Pl.'s Ex. 20. Nowhere in the letter did Ms. Brunelle reference Ms. Jackson's chapter 7 bankruptcy case or her discharge.

Ms. Jackson took these communications as news that there had been no foreclosure sale of her condominium unit after all and so on June 1, 2012, she moved back in to the unit. The period between February 6, 2009, when Ms. Jackson moved out of her condominium unit, and June 1, 2012, when she moved back in, plays a critical role in this adversary proceeding. For ease of reference I will henceforth refer to it as the "Vacancy Period."[4]

Shortly after resuming residency in her condominium unit, Ms. Jackson received a Notice of Mortgagee's Sale of Real Estate dated June 12, 2012, from Ms. Brunelle which stated that ING had scheduled a foreclosure sale of Ms. Jackson's unit to take place on July 18, 2012. Pl.'s Ex. 17. The foreclosure notice did not make reference to any amounts owed or demand payment.

Ms. Jackson testified at trial that the first time she communicated with Ms. Brunelle after receiving written correspondence was by phone and that Ms. Brunelle "refused to discuss anything with" her, other than to tell her that she "had to pay." Trial Tr. 79:15–17. In support of her testimony Ms. Jackson submitted into evidence a series of printed email communications between her and Ms. Brunelle, dated between July 2, 2012, and October 10, 2012. In a July 2,

---

[4] At trial Ms. Jackson testified to different move-out and move-in dates. I find Ms. Jackson's trial testimony on these and many other details to have been at best imprecise, inconsistent and confusing. I do not find her testimony on the Vacancy Period dates credible. In their joint pretrial memorandum, Ms. Jackson and Capital One agreed that the move-out date was "on or about February 6, 2009" and the move-in date was "on or about June 1, 2012." I find that February 6, 2009, and June 1, 2012, are the relevant dates.

5

2012 email, Ms. Jackson requested that Ms. Brunelle contact her about an accounting Ms. Brunelle had previously sent. Ms. Jackson informed Ms. Brunelle that her client's mortgage debt had been included in her prior bankruptcy case and that she intended to pursue her rights as to the bank's wrongful foreclosure. The other emails are of similar import.

At trial, Ms. Brunelle testified that "numerous communications" had been sent to Ms. Jackson, including notices of pending and postponed foreclosure auctions. Trial Tr. 100:14. P&G admitted into evidence a letter dated November 25, 2011, in which Ms. Brunelle notified Ms. Jackson of her default under the mortgage, the amount due under the note, and the opportunity to cure the default. In that letter Ms. Brunelle stated that P&G was a debt collector under the FDCPA and was attempting to collect a debt. The letter also contained the following disclaimer:

> Be advised that if your debt to the foreclosing lender has been discharged in bankruptcy, and said discharge has not been vacated or otherwise modified any time in the future then this notice is void and of no legal effect whatsoever, and does not serve in any way to assert or revive any claim that the lender may have had against you prior to the discharge being entered.

P&G Ex. 1.

Ms. Jackson testified at trial that she knew nothing about this letter and had never received it. I find her testimony on this point to have been untrue. Ms. Jackson testified that the first letter she received from P&G arrived about two weeks after she received an October letter from ING. Trial Tr. 18:20–23, 73:24. She stated she could not remember whether it was October of 2011 or 2012 but testified that she received both ING's and P&G's letters prior to moving back in to the North Chelmsford condominium unit. Trial Tr. 73:24–74:3. Since she moved in on June 1, 2012, I find that she received the ING letter in October 2011 and the P&G letter about two weeks later. If the ING letter arrived at the end of October 2011, then the P&G letter would

6

have arrived in November 2011. P&G's November 25, 2011, letter must have been that letter and I so find.

On July 13, 2012, Ms. Jackson filed in this court a voluntary petition under chapter 13 of the Bankruptcy Code. Her case was short lived, however. It was dismissed on July 31, 2012, because she failed to comply with an order to file certain schedules, statements and other documents. Undeterred, she thereafter moved to reopen her original chapter 7 case. On December 21, 2012, she was allowed to do so and then immediately converted her case to chapter 13 which is where the case stands today. On January 21, 2013, the automatic stay under Bankruptcy Code § 362 was re-imposed. On February 20, 2013, Ms. Jackson amended schedule A (real property) of her schedules of assets and liabilities to include the North Chelmsford condominium unit as an asset. She also amended schedule D (secured creditors) to list "Capital One NA, f/k/a ING" as a secured creditor holding a disputed claim in the amount of $209,000.

On February 19, 2013, Ms. Jackson commenced this adversary proceeding by filing her complaint naming as defendants, in addition to P&G, ING, Capital One, Bank of America Home Loans, and Harmon Law Offices, P.C. On May 20, 2013, she filed an amended complaint against the same parties. In her amended complaint Ms. Jackson asserted claims against the defendants for negligence, deceit, misrepresentation, breach of contract, wrongful foreclosure, bankruptcy discharge violations and violations of the FDCPA.

After the commencement of this adversary proceeding, Capital One filed a proof of claim in the main case, and then an amended proof of claim, asserting a claim in the amount of $295,064.22 plus attorneys' fees secured by Ms. Jackson's condominium unit. Ms. Jackson filed an objection to Capital One's amended proof of claim. In a December 31, 2013, memorandum of

7

decision on the claim dispute I overruled Ms. Jackson's objection to Capital One's claim "except as to the question of whether and in what amount Capital One's claim should be reduced to reflect the time that Ms. Jackson was displaced from residing in the condominium unit." *In re Jackson*, No. 10-11716, 2013 Bankr. LEXIS 5431, *31 (Bankr. D. Mass. Dec. 31, 2013). That question was then consolidated with this adversary proceeding and remained the sole issue to be tried as to Capital One.

On January 15, 2014, I granted summary judgment in Ms. Jackson's favor on count I of her amended complaint, determining that the original 2009 foreclosure of her mortgage was void. Prior to and after that I also disposed of all other claims asserted by Ms. Jackson in the amended complaint except those against P&G.[5] As to her claims against P&G, Ms. Jackson alleges in count V of the amended complaint that P&G violated the FDCPA and the Bankruptcy Code's discharge injunction and engaged in deceit and misrepresentation. In count VI, she asserts claims against P&G for breach of contract and wrongful foreclosure.

On October 31, 2014, Capital One attempted to further amend its proof of claim to reduce it to $246,242.22. In an attachment to the proof of claim it noted that it had "voluntarily agreed to reduce the amount of its claim by $48,822 to omit from its claim: (a) interest; (b) late fees; and (c) escrow payments that accrued during the time period that Ms. Jackson did not reside in the

---

[5] *See* Order on Mot. to Dismiss of Bank of America, May 2, 2013 [#55]; Order on Mot. to Dismiss of Capital One and ING, May 2, 2013 [#56]; Order on Mot. to Dismiss of Bank of America, July 11, 2013 [#96]; Order on Mot. to Dismiss of Capital One and ING, July 11, 2013 [#97]; Order on Mot. to Dismiss of Harmon, July 11, 2013 [#98]; Order, Jan. 15, 2014 [#116]; Judgment and Bench Ruling on the Mot. to Dismiss and/or for Summ. J. of ING and Capital One, June 19, 2014 [#134] (hereinafter "Bench Ruling").

North Chelmsford condominium unit as a result of the initial foreclosure action." After strenuous objection by Ms. Jackson to Capital One's attempted claim amendment, I denied it as untimely.

Ms. Jackson's claims against P&G and her objection to Capital One's proof of claim were the subject of a bench trial on July 22, 2015. At the conclusion of the trial the parties were given the opportunity to file post-trial briefs. Capital One and P&G having timely filed briefs,[6] the matter is now ready for adjudication.

## Positions of the Parties

*Claims against P&G*

In count V of her amended complaint Ms. Jackson alleges that P&G violated the FDCPA and the bankruptcy discharge injunction and engaged in deceit and misrepresentation when it assisted its client in attempting to foreclose on the North Chelmsford unit. She asserts that Ms. Brunelle of P&G knew Ms. Jackson had received a discharge of her debts in her chapter 7 bankruptcy case and thus P&G, through Ms. Brunelle, violated the discharge injunction by demanding payment in her January 2012 letter. Ms. Jackson claims that P&G admitted it was subject to the FDCPA when Ms. Brunelle stated in her letter and in subsequent emails that P&G was a debt collector attempting to collect a debt within the meaning of the FDCPA and that P&G violated that law by misrepresenting the amount, character and legal status of the debt when it falsely claimed that ING held the mortgage at the time the letter was sent when in fact the mortgage was held by Countrywide. Ms. Jackson does not elaborate on her deceit and

---

[6] Ms. Jackson failed to file her post-trial brief on time. Her motion to extend the time to file her brief, which was filed on the day the briefs were due, as well as a motion for leave to file a post-trial brief *nunc pro tunc,* were both denied.

9

misrepresentation claims; indeed, there is no mention of these claims in the body of count V, only in the heading.

P&G denies that it violated the discharge injunction when Ms. Brunelle sent her January 2012 letter, both because Ms. Brunelle did not know that Ms. Jackson had filed bankruptcy and received a discharge and because P&G had sent Ms. Jackson the November 2011 letter containing the bankruptcy disclaimer language referred to above. P&G also contends that any violation of the FDCPA was unintentional and excused by FDCPA § 1692k(c). Finally, P&G maintains that it did not engage in deceit and misrepresentation and that Ms. Jackson has failed to prove these claims by a preponderance of the evidence.

In count VI Ms. Jackson asserts claims against P&G for breach of contract and wrongful foreclosure in connection with its attempt to reforeclose on her property. She alleges that by failing to provide her with certain pre-foreclosure notices and statutory protections required by Mass. Gen. Laws ch. 244, § 35A, P&G, as the agent of her lender, breached her mortgage contract and also violated state foreclosure law. Based on these claims she requests an injunction prohibiting P&G from proceeding with foreclosure. P&G responds that there was never any privity of contract between it and Ms. Jackson and that Mass. Gen. Laws ch. 244, § 35A is inapplicable to this matter because the North Chelmsford property was not Ms. Jackson's primary residence at the time P&G initiated foreclosure proceedings and, in any event, Ms. Jackson never alleged that P&G actually foreclosed on the property.

*Claim against Capital One*

Regarding the appropriate reduction of Capital One's proof of claim, Ms. Jackson asserts that she should not be liable for interest, escrow or any other loan or foreclosure related charges

accrued during the Vacancy Period, "plus attorney [sic] fees and costs." Joint Pre-Trial Mem. 4 [#164]. She does not, however, quantify any of these items.

Capital One concedes that its claim should be reduced by the amount of interest, escrow payments and late fees charged during the Vacancy Period which it calculates to be $48,822. It takes issue, however, with Ms. Jackson's demand for attorneys' fees and costs. Capital One asserts that it is inappropriate to award Ms. Jackson attorneys' fees and costs because their dispute is in the context of an objection to claim and, in any event, such relief has been precluded by the Court's prior orders. Joint Pre-Trial Mem. 4–5.

## Conclusions of Law

*Violation of Discharge Injunction by P&G (Count V)*

Section 524(a)(2) of the Bankruptcy Code provides that with respect to any debt a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Bankruptcy courts enforce the discharge injunction by applying Bankruptcy Code § 105(a) which empowers the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Code.[7]

"To make out a prima facie case for contempt of a discharge order, the debtor must show that the creditor knew that the discharge order entered and intentionally engaged in conduct that

---

[7] While the preferable vehicle to enforce the discharge injunction is a motion for contempt, seeking such relief as part of an adversary proceeding, as Ms. Jackson does here, is not a fatal procedural misstep. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 444-46 (1st Cir. 2000).

11

violated [the discharge injunction and order]." *In re Zine*, 521 B.R. 31, 38 (Bankr. D. Mass. 2014). A violation must be proven by clear and convincing evidence. *Id.* The Court should consider objectively the totality of the circumstances surrounding the alleged violation. *Id.* "[E]ven legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debt." *Pratt v. GMAC (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006).

Ms. Jackson has carried her burden to establish that P&G violated the discharge injunction. Although P&G asserted that Ms. Brunelle was not aware of the discharge that entered on May 25, 2010, during the chapter 7 phase of the main case, Ms. Brunelle testified at trial that she assumed she knew of Ms. Jackson's bankruptcy case when she sent her November 2011 letter because she included in that letter the bankruptcy disclaimer language. She testified that it was her customary practice to run a bankruptcy search of borrowers on the court's PACER public records registry whenever a new foreclosure matter was referred to her. Trial Tr. 95:13–19, 100:25–101:13. Running such a search in November 2011 would have disclosed Ms. Jackson's bankruptcy and her discharge. I therefore find that P&G was aware by November 2011 that a discharge had entered in Ms. Jackson's bankruptcy case.

I also find that P&G intentionally engaged in conduct that violated the discharge injunction when Ms. Brunelle sent her January 2012 letter to Ms. Jackson. Even though Massachusetts law required that the letter be sent as a prerequisite to foreclosure, the letter need not have been drafted in such a way as to seek to collect a debt from Ms. Jackson personally. The letter included multiple demands for payment but unlike the November 2011 letter it contained

12

no disclaimer informing Ms. Jackson that she had no personal liability on the note because of her bankruptcy discharge. A letter that requires a discharged debtor to pay immediately the entire mortgage indebtedness, requests that the debtor take action to obtain current payoff figures prior to forwarding any payment and closes by indicating that the sender is a debt collector and as such is attempting to collect a debt must, under these circumstances, be objectively viewed as an act to collect a debt in violation of the discharge injunction. The fact that a prior letter from the same sender acknowledges the debtor's bankruptcy discharge does not relieve the sender of its obligation to abide by the discharge injunction in a subsequent letter.

Ms. Jackson also asserts that P&G's June 12, 2012 Notice of Sale and the 2012 emails from Ms. Brunelle violated the discharge injunction. I find that they did not because these communications included no demands for payments but rather served solely to provide Ms. Jackson with information.

*FDCPA Claim against P&G (Count V)*

Ms. Jackson has also met her burden to establish that P&G violated the FDCPA when it sent its January 2012 letter. I find: (1) that Ms. Jackson was the object of collection activity by P&G arising from consumer a debt; (2) that P&G is a debt collector as defined in the FDCPA; and (3) that P&G engaged in acts or omissions prohibited under the FDCPA. *See Krasnor v. Spaulding Law Office*, 675 F. Supp.2d 208, 211 (D. Mass. 2009).

As to the first element, there is no dispute that Ms. Jackson was the intended recipient of the January 2012 letter demanding payment and informing her of the bank's rights and remedies upon her continued default under the note and mortgage. As to the second, P&G is a self-proclaimed debt collector under the statute, as stated in its January 2012 letter and subsequent

emails from Ms. Brunelle. P&G has never argued otherwise. I find that pursuant to FDCPA § 1692a(6) at all times relevant to this matter P&G was a debt collector within the broad definition of the statute.[8] The third element necessary to establishing that P&G violated the FDCPA is a finding that P&G engaged in an act or omission prohibited under the Act. Viewing the January 2012 letter from the perspective of the proverbial hypothetical unsophisticated consumer, *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 100 (1st Cir. 2014), I find that P&G violated § 1692e(2)(A) when it claimed that ING held the mortgage on Ms. Jackson's condominium unit at the time it sent the letter. P&G misrepresented the legal status of the mortgage debt because Countrywide was the holder of the mortgage at that time. Moreover, P&G misrepresented the legal status of the debt when P&G declared in its letter that Ms. Jackson was "required to pay the entire mortgage indebtedness" when in fact and in law she was no longer personally liable for the debt after her chapter 7 discharge had entered.

P&G raises as a defense to its FDCPA violation § 1692k(c) which excuses an unintentional violation resulting from "a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such error." P&G has failed to establish a factual basis for its defense. P&G offered no evidence whatsoever as to the procedures it maintained for identifying the correct mortgage or note holder prior to proceeding with foreclosure or collection activity. Having failed to prove that it maintained procedures reasonably aimed at avoiding the misidentifying of its mortgagee clients, P&G's error, albeit unintentional, is nonetheless a

---

[8] Section 1692a(6) contains a broad (any person who uses any instrumentality of interstate commerce to collect a debt) and a narrow (any person who uses such instrumentality to enforce a security interest) definition of debt collector. Which definition applies affects what misconduct a debt collector may be liable for under the Act. The January 2012 letter places P&G squarely within the broad definition.

14

violation of FDCPA § 1692e(2)(a). *See Harrington v. CACV of Colo., LLC*, 508 F. Supp.2d 128, 132-33 (D. Mass. 2007) ("As implied by the final clause of § 1692k(c), even unintentional violations are actionable if Defendants did not maintain 'procedures reasonable adapted to avoid such error.'").

*Deceit and Misrepresentation Claims against P&G (Count V)*

Ms. Jackson has also alleged (in the title but not the body of count V of her amended complaint) that P&G engaged in deceit and misrepresentation presumably by stating in the January 19, 2012 letter that it was representing ING in foreclosing on the North Chelmsford condominium unit when at the time the mortgage was held by Countrywide. "In an action for deceit under Massachusetts law, a plaintiff must show that the defendant: made a false representation of material fact; for the purpose of inducing reliance; and that the plaintiff relied upon the representation to his or her detriment." *Lacey v. BAC Home Loans Servicing, LP (In re Lacey)*, 480 B.R. 13, 54 (Bankr. D. Mass. 2012) (quoting *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 23 (1st Cir. 2001)). "In Massachusetts, proof of misrepresentation requires that a plaintiff show a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment." *Edlow v. RBW, LLC*, 688 F.3d 26, 36 (1st Cir. 2012); *see also Lacey*, 480 B.R. at 55. "[A] plaintiff must show reasonable or justifiable reliance on the allegedly injurious representation." *Edlow*, 688 F.3d at 36. Ms. Jackson failed to carry her burden to establish all of these elements during the course of this adversary proceeding. At a minimum, she failed to show that she relied to her detriment upon any misrepresentation by P&G. Judgment will therefore enter in favor of P&G on the claims of deceit and misrepresentation.

15

*Wrongful Foreclosure and Breach of Contract Claims against P&G (Count VI)*

Ms. Jackson cannot prevail on her wrongful foreclosure and breach of contract claims against P&G in connection with the attempted reforeclosure sale for the same reasons that I ruled against her on those same claims asserted against defendants ING and Capital One. *See* Bench Ruling. There can be no wrongful foreclosure claim because there was never a foreclosure sale. *See Nash v. GMAC Mortg., LLC*, No. 10-492, 2011 U.S. Dist. LEXIS 142081, at *38 (D.R.I. May 18, 2011). And because there was never a foreclosure sale, Ms. Jackson's breach of contract claim based on Mass. General Laws c. 244, § 35A is not ripe for adjudication.

"General Laws c. 244, § 35A . . . gives a mortgagor of residential real property in the Commonwealth a . . . right to cure a payment default before foreclosure proceedings may be commenced." *U.S. Bank Nat'l Ass'n v. Schumacher*, 5 N.E.3d 882, 884 (Mass. 2014). Section 35A is not part of the mortgage foreclosure process. *Id*. As the Massachusetts Supreme Judicial Court ruled in *Schumacher*, redress for a pre-foreclosure §35A violation would "at best . . . [entitle a homeowner] to an injunction and issuance of a compliant § 35A notice and a new cure period." Bench Ruling 4. As a result of the re-imposition of the automatic stay upon reopening Ms. Jackson's bankruptcy case, P&G, like Capital One, is already enjoined from taking any action to foreclose. Bench Ruling 5. Further, a new §35A notice would not even be warranted if Ms. Jackson successfully cured her default pursuant to Bankruptcy Code § 1322(b)(5) as part of a chapter 13 plan. Ms. Jackson's claim that P&G breached the loan documents by violating § 35A is premature and not susceptible to any relief in this adversary proceeding. Having ruled that there is no wrongful foreclosure claim, it is not necessary to address P&G's added defense that

16

Ms. Jackson was not entitled to a § 35A notice because the North Chelmsford condominium unit was not her principal residence.

Additionally, Ms. Jackson cannot not prevail on a breach of contract claim against P&G because she has failed to establish that she was in privity with P&G. There is no privity of contract between a mortgagor and a law firm retained by a mortgagee to conduct a statutory foreclosure. *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1247 (8th Cir. 2006). *See Nash*, 2011 U.S. Dist. LEXIS 142081, at *45 (concluding that law firm was not liable under loan documents for client bank's alleged actions when there is no privity between the plaintiff and law firm); *Kitner v. Mortg. Lenders Network USA, Inc.*, No. 2011-02078, 2013 Mass. Super. LEXIS 28, at *10-14 (Mass. Super. Ct. Feb. 8, 2013) (dismissing claim against law firm when plaintiffs failed to plausibly allege that law firm representing bank in foreclosure proceedings was a party to a contract with the plaintiffs).

*Allowance of Capital One's Proof of Claim*

As previously noted in my December 31, 2013 memorandum of decision on Ms. Jackson's objection to Capital One's claim, "Ms. Jackson has carried her burden of presenting substantial evidence to rebut the *prima facie* validity of Capital One's proof of claim to the extent it includes amounts accrued during the time period when Ms. Jackson did not reside in the condominium unit." *In re Jackson*, 2013 Bankr. LEXIS 5431, at *30–31. Thus "the burden . . . shifts back to [Capital One] to establish the validity of its claim" as to these amounts. *In re Long*, 353 B.R. 1, 13 (Bankr. D. Mass. 2006*)* (citing *Juniper Dev. Grp. v. Kahn* (*In re Hemingway Transp., Inc.*), 993 F.2d 915, 925 (1st Cir. 1993)).

Rather than demonstrating that the amounts set forth in its claim are valid, Capital One has agreed to reduce its claim to exclude charges for interest, escrow payments and late fees during the Vacancy Period. Ever since Capital One unsuccessfully attempted to amend its proof of claim on October 31, 2014, it has been consistent in offering accountings and calculations that support a $48,822 credit for these items which would reduce its claim to $246,242.22. Ms. Jackson succeeded in thwarting the formal amendment of Capital One's proof of claim only to appear at trial with no meaningful alternative to calculating an appropriate reduction.[9] In fact, Ms. Jackson introduced as an exhibit at trial the very same amended proof of claim of Capital One that she had successfully demanded be stricken. Having reviewed the accounting offered by Capital One, I find that a reduced claim in the amount of $246,242.22 appropriately reflects the exclusion of interest, escrow payments and late fees charged during the Vacancy Period.[10] There will be no further reduction for attorneys' fees or costs incurred by Ms. Jackson.[11]

---

[9] At trial Ms. Jackson's testimony focused on the principal balance owed on her note and "[t]he difference between the amount allegedly owed at the time of the foreclosure and the time that she moved back in." Trial Tr. 28:13–15. Her testimony was vague and confusing, offered no specific or additional amounts by which Ms. Jackson proposed Capital One's claim should be reduced and provided no reason to deviate from Capital One's reduction calculation. It was also irrelevant because any reduction in Capital One's claim for accruals during the Vacancy Period would not have affected the loan's principal balance.

[10] I note one inconsistency in Capital One's accounting. It appears that the interest calculation made by Capital One includes a credit for interest charged beginning in February 2008 rather than February 2009, when Ms. Jackson vacated her condo. I will, however, not second guess Capital One on its voluntarily agreeing to reduce its claim to $246,242.22.

[11] In her objection to Capital One's claim, Ms. Jackson asserted a counterclaim alleging "that Capital One's actions as stated in the Adversary Complaint were unfair and deceptive within the meaning of Chapter 93A of the General Laws of Massachusetts" and sought an award of damages and attorneys' fees. My December 31, 2013 memorandum of decision ruled that any such damages and fees would be more appropriately dealt with in this adversary proceeding as a part of Ms. Jackson's claims against Capital One. But by June 19, 2014, the point at which the Court granted Capital One summary judgment on Ms. Jackson's last remaining cause of action

Conclusion

Judgment will enter in this adversary proceeding in favor of P&G on Ms. Jackson's claims alleging wrongful foreclosure, breach of contract, deceit and misrepresentation. Judgment will enter in Ms. Jackson's favor against P&G for violation of the bankruptcy discharge injunction and § 1692e(2)(A) of the FDCPA. Further proceedings for the assessment of damages will be scheduled.

A separate order will enter in the main case allowing Capital One's proof of claim in the amount of $246,242.22.

Dated: February 1, 2016                                     By the Court,

                                                            _____
                                                            Melvin S. Hoffman
                                                            U.S. Bankruptcy Judge

        Counsel Appearing:    David Baker, Esq.
                              Boston, MA
                              for the plaintiff

                              Darren J. Rillovick, Esq.
                              Portnoy & Greene, P.C.
                              Needham, MA
                              for the defendant, Portnoy & Greene, P.C.

                              David Himelfarb, Esq.
                              McCarter & English, LLP
                              Boston, MA
                              for the defendant and claimant, Capital One, N.A.

---

(Count VI – breach of contract and wrongful foreclosure) against it, Ms. Jackson had failed to provide any basis for an award of attorneys' fees or monetary damages against Capital One. *See* Bench Ruling. Her failure to pursue the matter precludes any relief now.