UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re:<br><br>KIMMY R. JACKSON,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 13<br>Case No. 10-11716-MSH |
| KIMMY R. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>ING BANK, FSB, BANK OF AMERICA HOME LOANS, PORTNOY & GREENE PC, HARMON LAW OFFICES, P.C., AND CAPITAL ONE, N.A.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>No. 13-01064 |

**MEMORANDUM OF DECISION AND ORDER ASSESSING DAMAGES AGAINST
<u>DEFENDANT, PORTNOY & GREENE PC</u>**

As a result of the judgment entered in this adversary proceeding on February 1, 2016 [#200] in favor of the plaintiff, Kimmy Jackson, and against the defendant Portnoy & Greene, PC ("P&G"), I conducted an evidentiary hearing on July 7, 2016, to determine appropriate damages to assess against P&G for violating the discharge injunction under Bankruptcy Code § 524, and for violating § 1692e(2)(A) of the Fair Debt Collection Practices Act ("FDCPA").[1] After considering the evidence presented, the parties' written submissions, and arguments of

---

[1] A detailed discussion of the facts and legal predicates for the judgment entered against P&G appears in my Memorandum of Decision dated February 1, 2016 [#199].

1

counsel, I will assess damages against P&G in favor of Ms. Jackson in the amount of $17,994. In doing so, I have relied on the following legal and factual support.

"[A] bankruptcy court is authorized to invoke [Bankruptcy Code] § 105 to enforce the discharge injunction imposed by § 524 and order damages…if the merits so require." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000), *amended on denial of reh'g* (Dec. 15, 2000). I am empowered "to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524." *Id.* The FDCPA provides that any debt collector who violates the statute is liable for "actual damages, statutory damages of up to $1,000, and the cost of the action, together with a reasonable attorney's fee as determined by the court." *French v. Corporate Receivables, Inc.*, 489 F.3d 402, 403 (1st Cir. 2007) (quoting 15 U.S.C. § 1692k(a)).

Ms. Jackson claims damages of $62,882.50. In her testimony and filings as to the assessment of damages, she assumes that a damage award should include all her expenses in connection with the main chapter 13 case as well as this adversary proceeding. She maintains that the two letters sent by P&G, in November 2011 and January 2012, which formed the basis for the judgment entered against P&G, precipitated her chapter 13 case and the entirety of this adversary proceeding. This may technically be true, but it doesn't justify the result Ms. Jackson urges. The features of the two letters which violated the discharge injunction and the FDCPA, namely the claims that Ms. Jackson owed ING Bank money, were not the primary reason for Ms. Jackson's reopening her closed chapter 7 case and converting it to chapter 13, or her filing this adversary proceeding with a multi-count complaint against five defendants. It was something else contained in those letters, namely, the news that Ms. Jackson still owned her condominium unit despite a 2008 foreclosure. This prompted Ms. Jackson to move back into her unit, reopen

2

her chapter 7 case in order to convert it to chapter 13 in an attempt to retain ownership of the unit and sue everyone who had anything to do with the prior and current attempts to foreclose upon it. For this reason, I do not credit Ms. Jackson's testimony that P&G's offending conduct proximately resulted in damages to her equivalent to the *entirety* of her legal fees and costs in connection with her chapter 13 case and this adversary proceeding.

There is also the matter of a superior court action brought by Ms. Jackson against P&G and others in July of 2012. Ms. Jackson drafted the complaint and initiated the suit on her own, but in November of 2012 she retained Thomas B. Vawter as her counsel and paid him $7,500 to represent her. She has included Mr. Vawter's fees in her damage claim against P&G in this adversary proceeding.

I have reviewed the superior court complaint, introduced into evidence at trial. Drafted by Ms. Jackson without the benefit of counsel, the complaint is not a model of clarity. It contains a count (count II) entitled "Violation of Federal Bankruptcy" alleging violations both of Ms. Jackson's bankruptcy discharge and the FDCPA without actually identifying which of the many named defendants perpetrated the alleged violations and without including in her prayers for relief any requested remedy as to those alleged violations. The complaint contains nine other counts unrelated to her bankruptcy discharge or the FDCPA violations. The complaint's primary thrust is to seek an injunction to prevent the defendants from proceeding with a second foreclosure of her condominium unit.

While I am prepared to accept Ms. Jackson's testimony that count II of her superior court complaint targeted P&G, I am not prepared to find that her legal fee to Mr. Vawter should be included in her damages suffered as a result of P&G's violations. Like the claims in this adversary proceeding, the claims asserted against P&G in the superior court comprised only a

3

fraction of the claims asserted by Ms. Jackson. Thus, P&G's offending conduct cannot be said to have proximately resulted in damages to Ms. Jackson equivalent to the entirety of her legal fee in the superior court action. Furthermore, and unlike this adversary proceeding, the superior court case was voluntarily dismissed by Ms. Jackson after the court refused to enjoin the then pending foreclosure sale of her unit.

It is against this legal and factual backdrop that I have quantified Ms. Jackson's damages flowing proximately from P&G's discharge and FDCPA violations.

Ms. Jackson testified at the hearing on assessment of damages that her attendance at the trial and other hearings involving P&G's violations caused her to miss a total of three days of work resulting in lost earnings of $600. I find her testimony credible and include Ms. Jackson's claim for lost compensation of $600 in her damage award. She also testified to incurring costs for postage, gas, and parking in connection with her court appearances and mailing of documents, but failed to state the amounts. I am unable to include her claim for these items in the damage award.[2] She testified to incurring $49 for copying costs in connection with sending various documents to P&G and others. I will include Ms. Jackson's copying costs in her damage award. Ms. Jackson testified to paying $281 to the clerk of the bankruptcy court to institute her chapter 13 case.[3] Having concluded that her chapter 13 case was not proximately caused by P&G's offending conduct, I will not include this amount in Ms. Jackson's damage award.

---

[2] At the damage assessment hearing, while Ms. Jackson was on the witness stand, her attorney handed her a document to refresh her recollection as to these and other expenses. That document was not introduced into evidence or otherwise identified. After reviewing it, Ms. Jackson testified to incurring costs for postage, gas, and parking but never testified to precise amounts.
[3] More precisely to reopen her previously closed chapter 7 case so she could convert it to chapter 13.

4

Case 13-01064    Doc 226    Filed 07/29/16    Entered 07/29/16 16:30:31    Desc Main
Document    Page 5 of 7

As indicated previously, the FDCPA provides for the imposition of statutory damages of up to $1,000 against those who have violated the statute. In fashioning an order of statutory damages, the court shall consider "among other relevant factors…the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b). As discussed in my February 1, 2016 Memorandum of Decision, P&G not only misrepresented the legal status of Ms. Jackson's debt in two separate letters, but also failed to prove that it maintained practices or procedures aimed at avoiding misidentifying mortgagee clients. I will assess the maximum statutory amount against P&G in this adversary proceeding.

Ms. Jackson's damage claim includes all her attorneys' fees in connection with her chapter 13 case, this adversary proceeding, and the superior court case. For the reasons discussed above, this is an overreach.

With respect to the superior court case, the allegations of discharge and FDCPA violations against P&G were only one of ten counts asserted by Ms. Jackson. Because Ms. Jackson voluntarily dismissed her case, I find no basis to include Ms. Jackson's attorney's fees of $7,500 in connection with that action in her damage award in this adversary proceeding.

Ms. Jackson also includes in her damage claim her fees to her attorney, David Baker, in connection with her chapter 13 case and this adversary proceeding. At the assessment of damages hearing, Ms. Jackson testified that she thought the amount being sought by Mr. Baker in a fee application filed in her chapter 13 case [#184] would be a reasonable amount to assess against P&G. That amount is $44,364.73 consisting of fees, based on Mr. Baker's billing rate of $350 per hour, of $44,159.82 and expenses of $204.91.

Under the Bankruptcy Code and the FDCPA, Ms. Jackson is entitled to an award of reasonable attorney's fees in connection with her judgment against P&G. Mr. Baker's pending fee application is certainly relevant to my determining what that amount should be. I find, first, that Mr. Baker's hourly rate of $350 is a reasonable rate for an attorney of his experience performing the services rendered here. As indicated previously, however, Ms. Jackson's chapter 13 case was not precipitated by P&G's offenses and so none of the $9,444.91 in Mr. Baker's fee application attributable to the chapter 13 case or any of the costs of $204.91, which were charged in the chapter 13 case, may be included in an award of attorney's fees to be assessed against P&G. As for the balance of Mr. Baker's fee request for $34,510 attributable to this adversary proceeding, it would be inappropriate to hold P&G liable for the entire fee since the claims against P&G comprise only a portion of the many claims asserted and intensively litigated in this adversary proceeding.

In its opposition to Ms. Jackson's request for damages, P&G identified in detail $18,410 in fees requested by Mr. Baker for services rendered in this adversary proceeding that do not relate to the judgment entered against P&G. I find P&G's analysis of Mr. Baker's fee application reasonable. After reviewing Mr. Baker's fee application and P&G's itemized list of Mr. Baker's time entries that it asserts do not apply to the judgment against P&G, I find that $16,345 is a reasonable attorney's fee to include in Ms. Jackson's damage award.

Ms. Jackson also seeks punitive damages against P&G in the amount of $2,653.75 for its violation of the discharge injunction. In *In re Cherry*, the bankruptcy court surveyed the existing decisional authority on the appropriateness of assessing punitive damages for discharge violations. The court observed, "whether expressed as 'egregious conduct,' 'malevolent intent,' or 'clear disregard of the bankruptcy laws,' each of these decisions appear [sic] to employ a

finding of creditor conduct beyond willfulness or deliberation and more closely resembling a specific intent to violate the discharge injunction in order to assess punitive damages." *In re Cherry*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000) (internal citations omitted); *see also In re Perviz,* 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003) (noting that punitive damages serve the same purpose as criminal penalties). Neither the evidence presented at trial nor my findings based on that evidence supports the conclusion that P&G's conduct was sufficiently pernicious to justify the imposition of punitive damages. I will not, therefore, include a punitive damages component in the damages award to Ms. Jackson.

Based on the foregoing, it is hereby ORDERED that damages are assessed against Portnoy & Greene PC in favor of Kimmy Jackson on the Judgment entered in this adversary proceeding on February 1, 2016 in the amount of $17,994, consisting of actual damages in the amount of $649, statutory damages under the FDCPA of $1,000, and attorneys' fees in the amount of $16,345.

Dated: July 29, 2016                                               By the Court,

                                                                   _____
                                                                   Melvin S. Hoffman
                                                                   U.S. Bankruptcy Judge


    Counsel Appearing:    David Baker, Esq.
                          Boston, MA
                          for the plaintiff

                          Darren J. Rillovick, Esq.
                          Needham, MA
                          for the defendant, Portnoy & Greene, P.C.